**SIGNED THIS: September 23, 2011**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CENTRAL ILLINOIS ENERGY | ) | Case No. 09-81409 |
| COOPERATIVE, | ) | |
| Debtor. | ) | |
| | ) | |
| RICHARD E. BARBER, not individually | ) | |
| but as trustee for the estate of Central Illinois | ) | |
| Energy Cooperative, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-08021 |
| | ) | |
| HITCHCOCK SCRAP YARD, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on cross motions for summary judgment filed in this proceeding brought by Richard E. Barber, as Trustee of the estate of the Debtor, Central Illinois Energy Cooperative (DEBTOR), against Hitchcock Scrap Yard, Inc. (DEFENDANT),

to recover payments of $2,181.96, as a fraudulent transfer.

*Background*

This adversary proceeding, brought by Richard E. Barber (TRUSTEE), is one of many which involves the relationship between the DEBTOR and certain related entities. The DEBTOR, an agricultural cooperative comprised of farmers in the Central Illinois area, was formed in 2001 for the purpose of constructing, owning and operating a grain handling facility and administration building. The DEBTOR owned a controlling interest in Central Illinois Holding Company, LLC, the holding company for Central Illinois Energy, LLC (CIE), the entity formed in March, 2004, for the purpose of constructing, owning and operating an ethanol production facility and waste-coal fired power generating facility. The grain handling facility being constructed by the DEBTOR was located on land adjacent to the ethanol plant being built by CIE. The DEBTOR'S members are Central Illinois farmers who intended to grow and sell corn, through the DEBTOR, to CIE for processing into ethanol and other byproducts. On March 31, 2006, the DEBTOR entered into a lease of the grain handling facility and the administrative office building with CIE, whereby CIE agreed to pay rent of $60,000 per month for an initial term of ten years. Under the terms of the lease, the DEBTOR remained responsible for completing construction.[1]

After encountering financial difficulties, the DEBTOR, on or about June 12, 2007, transferred substantially all of its assets, including the grain handling facility and numerous corn delivery contracts to Green Lion Bio-Fuels, LLC. Delays and cost overruns continued to plague the project and the general contractor on the ethanol plant ceased

---

[1] The lease, dated March 31, 2006, obligated the DEBTOR to construct the grain handling facility and the administrative office building by June 1, 2007. The DEBTOR did not meet that deadline.

2

working in November, 2007. CIE filed a Chapter 11 petition on December 13, 2007, and an order for conversion to Chapter 7 was entered on August 4, 2008. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, substantially all of CIE'S assets were sold to New CIE Energy Opco, LLC, by order entered April 24, 2008.

Beginning in September, 2007, orders were placed with the DEFENDANT for structural steel. The invoices, summarized below, listed "Central Illinois Energy" as the customer and made note of the employee signing the delivery ticket and picking up the order.

| Date | Name of Employee | Cost |
|---|---|---|
| September 12, 2007 | Brent Kosowski | $ 680.00 |
| October 8, 2007 | Brent Kosowski | 1,023.73 |
| October 12, 2007 | Brent Kosowski | 216.70 |
| October 26, 2007 | John Powell | 261.54 |

The DEBTOR made the following payments to the DEFENDANT, on the dates and in the amounts listed:

| Date | Amount |
|---|---|
| October 3, 2007 | $ 679.99 |
| October 18, 2007 | 1,023.73 |
| November 8, 2007 | 216.70 |
| November 8, 2007 | 261.54 |

A Chapter 11 involuntary petition was filed against the DEBTOR on May 1, 2009. The DEBTOR did not file an answer and an order for relief was entered on June 18, 2009. The case was converted to Chapter 7 on July 16, 2009, on the motion of the U.S. Trustee. With approval of the Court, and no one appearing for the DEBTOR, the schedules were prepared by HWS Energy Partners, LLC, the petitioning creditor. The schedules filed on

behalf of the DEBTOR disclose that it held 17.75 million units of Central Illinois Holding Company, LLC, constituting a 71% ownership. Central Illinois Holding Company, LLC, included in the list of the DEBTOR'S business interests in the DEBTOR'S Statement of Financial Affairs, is identified as the holding company for CIE.

The TRUSTEE brought this adversary proceeding to recover the payments to the DEFENDANT as fraudulent conveyances on the theory that the DEBTOR paid obligations owed not by it, but by CIE. Count I of the complaint seeks avoidance of the transfer pursuant to section 548(a). Counts II and III assert similar claims under the Illinois Uniform Fraudulent Transfer Act, alleging constructive fraud under sections 5(a)(2) and 6(a). 740 ILCS 160/5(a)(2), 6(a)[2] Both parties have moved for summary judgment.

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that

---

[2] Counts II and III, brought under companion fraudulent transfer provisions under Illinois law, require substantially similar showings. The DEFENDANT, unlike the TRUSTEE, has not limited its motion for summary judgment to Count I. For purposes of this Court's ruling, no analytical distinction will be made between the claims asserted under the Bankruptcy Code and those made pursuant to state law.

4

there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

The filing of cross motions for summary judgment does not by itself indicate the absence of genuine issues of material fact. *In re Schreiber*, 163 B.R. 327, 331 (Bankr.N.D.Ill. 1994). The merits of each motion must be evaluated independently of the other. *In re Citron*, 428 B.R. 562 (Bankr.E.D.N.Y. 2010). The court must ensure that the non-moving party gets the benefit of having all inferences drawn in its favor. *In re Crystal Apparel, Inc.*, 220 B.R. 816 (Bankr.S.D.N.Y. 1998). Where a genuine issue of material fact exists, summary judgment is not appropriate for either party. *In re TennOhio Transp. Co.*, 247 B.R. 715 (Bankr.S.D.Ohio 2000).

The TRUSTEE seeks summary judgment on Count I of his complaint, brought under section 548(a)(1)(B). That section provides, in relevant part, as follows:

> (a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within two years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>                * * *
>     (B) (i) received less than a reasonably equivalent value in exchange for such transfer . . . and
>         (ii) (I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . .

11 U.S.C. § 548(a)(1)(B).

5

For the TRUSTEE to prevail on his motion for summary judgment on his fraudulent conveyance claims, the Court must find that the undisputed evidence establishes that (1) an interest of the DEBTOR was transferred, (2) within two years of the date of the filing of the petition, (3) that the DEBTOR received less than reasonably equivalent value in exchange for the transfer, and (4) that the DEBTOR was insolvent on the date of the transfer or became insolvent as a result of the transfer. For the DEFENDANT to prevail against the TRUSTEE on its motion for summary judgment, it must demonstrate that the TRUSTEE'S evidence is insufficient to establish an essential element of the TRUSTEE'S claim.

There is no dispute that the DEBTOR'S funds were transferred within two years of the date of the filing of the petition. In support of his motion for summary judgment, the TRUSTEE, maintaining that the DEBTOR did not receive reasonably equivalent value in exchange for the transfers, contends that the transfers were not for the benefit of the DEBTOR, but were to satisfy an indebtedness of CIE. The TRUSTEE'S claim is founded primarily upon an intercompany account, maintained as part of the DEBTOR'S general ledger, which reflects payments made by the DEBTOR for the benefit of or in satisfaction of liabilities of CIE. The TRUSTEE submits the report of Neil Gerber, the expert he engaged to conduct an insolvency analysis of the DEBTOR. Based upon an examination of the DEBTOR'S books and records, Gerber prepared a schedule of intercompany transactions, listing advances made on behalf of CIE and reimbursements made to the DEBTOR by CIE.

The DEFENDANT'S cross motion for summary judgment is premised on its position that the DEBTOR received reasonably equivalent value, asserting that (1) the DEBTOR, obligated to complete construction of the grain handling facility and the administration building, contracted with the DEFENDANT for the purchase of structural steel needed for

6

those structures and paid for the materials which the DEFENDANT delivered to those facilities; (2) CIE contracted with the DEFENDANT for the purchase of structural steel for the ethanol and power plant and paid the DEFENDANT for those purchases; and (3) if the DEBTOR paid for any deliveries made to CIE, the DEBTOR submitted those expenses to CIE and the DEBTOR was later reimbursed by CIE.

In support of its motion, the DEFENDANT submits the affidavit of its President, Michael Hitchcock, who asserts that during 2007, the DEBTOR "contracted verbally with the DEFENDANT at various times for the delivery of structural steel," that the DEFENDANT delivered the steel to the DEBTOR at the ethanol plant in Canton, and that the DEBTOR paid for the materials that it had ordered.[3] The DEFENDANT also submits the declaration of Michael W. Smith, the DEBTOR'S President and Chief Executive Officer, as well as CIE'S General Manager. Smith concedes that during 2007, CIE contracted with the DEFENDANT for the purchase of structural steel to be used in the construction of the ethanol plant and that the DEBTOR paid for the steel ordered by CIE. Smith asserts, however, that CIE reimbursed the DEBTOR for those payments. The DEFENDANT also submitted the lease of the grain handling facility between the DEBTOR and CIE. Alternatively, the DEFENDANT contends that the TRUSTEE is not entitled to summary judgment because there remain issues of material fact concerning whether the DEBTOR was insolvent in September and October of 2007, when the transfers were made.

The determination of whether a debtor received reasonably equivalent value in exchange for a transfer does not require a dollar-for-dollar equivalent. *Barber v. Golden Seed*

---

[3] The DEFENDANT attests that the prices charged for the deliveries to the DEBTOR were competitive. No claim to the contrary is made by the TRUSTEE.

*Co., Inc.*, 129 F.3d 382 (7th Cir. 1997); *In re Advanced Telecommunication Network, Inc.*, 490 F.3d 1325 (11th Cir. 2007). As a general rule, a fraudulent transfer occurs when a debtor pays the debt of another, when the debtor itself is not obligated on the debt. *In re Integrated Agri, Inc.*, 2005 WL 3088612 (Bankr.C.D.Ill. 2005). An exception to that general rule has been recognized, however, where the debtor benefits indirectly from paying the debt of a third party. *In re Image Worldwide, Ltd.*, 139 F.3d 574 (7th Cir. 1998); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2nd Cir. 1981).

The delivery tickets submitted by the DEFENDANT are ambiguous and inconclusive, referencing only "Central Illinois Energy" without further identifying the purchaser as the DEBTOR (Central Illinois Energy Cooperative) or as CIE (Central Illinois Energy, LLC). More importantly, the Court notes that the TRUSTEE mistakenly regards each of the four payments as having been recorded by the DEBTOR as advances on behalf of CIE. It is only the first two payments that are reflected on the schedule prepared by Gerber. Whether Gerber inadvertently omitted the later payments on his schedule or whether those payments were not reflected as being an advance on behalf of CIE is not known. The Court is not willing to assume the former and because of that uncertainty, the TRUSTEE'S motion for summary judgment must be denied as to those transfers.

The Court also notes that the schedule prepared by Gerber reflects that CIE reimbursed the DEBTOR the sum of $95,000 on September 28, 2007, and the sum of $44,500 on October 1, 2007. While those reimbursements from CIE were made prior to the second purchase from the DEFENDANT on October 8, 2007, the proximity of the reimbursements

with both the purchases made from the DEFENDANT and the payments of those obligations by the DEBTOR poses questions unanswered by Gerber's analysis. It does not appear from his report that Gerber interviewed any officers or employees of the DEBTOR or CIE to determine the nature of their agreement as to the intercompany transfers and resulting obligations. Rather, Gerber, asserting that the reimbursements were not earmarked for specific payments, concluded that no advances which occurred after August 6, 2007, were reimbursed. Gerber's assumption, that the parties intended reimbursements to be applied on a first in/first out methodology, is just that, an unproven assumption.

Standing in direct contradiction to Gerber's conclusion that the DEBTOR was never reimbursed for the payments, is the sworn declaration of Mike Smith that the DEBTOR was in fact reimbursed for the payments made to DEFENDANT on behalf of CIE. The TRUSTEE characterizes the affidavits of Smith and Hitchcock as contradictory. The DEFENDANT'S President asserts that the purchases at issue were contracted for by the DEBTOR. If that is true, the payment of the invoices cannot be a fraudulent conveyance. *See Barber v. Camille's of Canton, Inc.*, Adv. No. 10-8017. Because neither of the affidavits refer to the specific payments which the TRUSTEE seeks to recover, but are couched in terms of verbal contracts having been made with the DEFENDANT "at various times" during 2007, they are not necessarily irreconcilable. But neither are they particularly enlightening. During the same time that CIE was constructing the ethanol plant, the grain handling facility was being constructed on adjacent property. Whether the structural steel purchased from the DEFENDANT was purchased by the DEBTOR for its use or for CIE, and if the latter, whether the DEBTOR was reimbursed by CIE, is unclear. It is also unclear, after the sale of its assets to Green Lion, whether or not the DEBTOR had any continuing

9

financial responsibilities respecting completion of the grain handling facility, administration building or related improvements. If not, it is difficult to see how any further payments by the DEBTOR for construction expenses could be said to be in satisfaction of its own liabilites.

Apart from those elementary facts, which are disputed, material and preliminary to any further argument, the DEFENDANT maintains that if any of the steel was purchased for CIE, the DEBTOR received a dollar-for-dollar account receivable. If there was, in fact, an agreement by CIE to reimburse the DEBTOR for the purchase price of structural steel used by CIE that the DEBTOR paid for, as it pertains to the issue of reasonably equivalent value, the focus of the inquiry is the value of CIE'S unsecured promise to repay the DEBTOR.

The fact that a debtor's payment of the debt of another person or entity is intended to be a "loan," not a gift, is far from dispositive on the issue of whether the promise to repay constitutes reasonably equivalent value in exchange for the payment. That question can only be answered by examining the promisor's financial circumstances in order to ascertain the likelihood of repayment. *See, e.g., In re Advanced Telecommunication Network, Inc.,* 490 F.3d 1325, 1337 (11th Cir. 2007); *In re USA Commercial Mortg. Co.,* 2011 WL 2516270 (9th Cir. 2011); *Caterpillar, Inc. v. Jerryco Footwear, Inc.,* 880 F.Supp. 578, 592 (C.D.Ill. 1994); *In re Nat. Century Financial Enterprises, Inc.,* 341 B.R. 198, 218 (Bankr.S.D.Ohio 2006).

While CIE'S balance sheet solvency may be circumstantial evidence relevant to that inquiry, an additional important question is whether CIE had access to funds necessary to pay the DEBTOR. Even insolvent entities are able to pay their debts as they come due if

10

they have access to a line of credit or another source of cash flow. A promise to pay that is premised on a reasonable likelihood of available funds may have value despite the obligor's negative net worth. Gerber's report does not address CIE'S access to funds at the time of the transfers, and it is doubtful this information could be extracted merely from a review of CIE'S books.[4]

The DEFENDANT also raises the specter of the "unity of interest" doctrine, contending that the DEBTOR received an indirect economic benefit from the payment of CIE'S obligation, noting that at the time of the transfers, the DEBTOR owned more than 80 percent of the membership interest in CIE. The DEFENDANT'S argument evokes the "identity of interest" exception which occurs where the debtor and the third party "are so related or situated that they share an 'identity of interest' because what benefits one will, in such case, benefit the other to some degree." *In re Renegade Holdings, Inc. v. Huntington National Bank*, 2011 WL 3962284 (Bankr.M.D.N.C. 2011) (quoting *In re Ear, Nose and Throat Surgeons of Worcester, Inc.*, 49 B.R. 316 (Bankr.D.Mass. 1985). As the court in *Renegade* noted, however, a transfer to a solvent subsidiary is generally considered to be for reasonably equivalent value whereas a transfer by a parent company to a wholly owned subsidiary that is insolvent does not result in reasonably equivalent value. *See In re Pace*, --- B.R. ----, 2011 WL 1870054 (Bankr.W.D.Tex. 2011).[5] Those arguments, calling for a determination

---

[4] Of course, if CIE did actually reimburse the DEBTOR for the payments at issue, reasonably equivalent value is almost certainly established by that fact alone. If not, it will be important to know the contractual terms of repayment for comparison against CIE'S anticipated cash flow. A failure to repay a loan when promised is often highly probative of a lack of value to the unsecured promise of repayment.

[5] Whether that rule has any application where the subsidiary is not wholly owned, but debtor owns a controlling interest, is not a matter which the Court is required to address here.

of the solvency of CIE, are beyond the sparse record submitted by the parties in this proceeding.

In sum, based on the exclusion of the last two payments from Gerber's schedule of transfers between the DEBTOR and CIE, the significant transfer of funds from CIE to the DEBTOR around the time the purchases from the DEFENDANT were made, the lack of specificity in the affidavits of Smith and Michael Hitchcock, the lack of evidence of CIE'S access to funds, and the uncertainty of the DEBTOR'S continued role following the sale to Green Lion, the Court determines that genuine issues of material fact exist and that both motions for summary judgment must be denied. It is not necessary to address the issue of the DEBTOR'S insolvency at this stage.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###